THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MARVIN JOHNSON, Defendant-Appellant.

First District (5th Division)   No. 1—88—1969

Opinion filed November 30, 1990.

Michael J. Pelletier and Maria Harrigan, both of State Appellate Defender's Office, of Chicago, for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Renee Goldfarb, Paul Gliatta, and Donna Lambert, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LORENZ delivered the opinion of the court:

Following a bench trial, defendant Marvin Johnson was convicted of the murder of Marvetta Arrington, his 17-month-old daughter, and was sentenced to 30 years' imprisonment.

We affirm.

We summarize, below, the relevant testimony presented at trial.

Lavetta Arrington, Marvetta's mother, testified that on the evening of November 26, 1985, after engaging in an argument with the defendant, her boyfriend, at her apartment, she left him alone with seven children, including Marvetta, and spent the night at her mother's house. The next morning, she telephoned defendant at her apartment and told him she was going to pick up the children. Shortly thereafter, one of the children telephoned Arrington back. Arrington asked to speak to the defendant and, at that time, he advised her that Marvetta would not wake up. Arrington testified she told the defendant to call an ambulance and left for her apartment.

Arrington stated that when she dressed Marvetta on the morning of November 26, 1985, she did not notice any injuries on her body except for a "busted lip" which Marvetta sustained in a fall two days earlier at Arrington's mother's house.

Chicago police officer Alfonso Ware testified he was assigned to meet an ambulance at Arrington's apartment on the morning of November 27, 1985, and was the first officer on the scene. Upon arriv-

ing, Ware stated he saw Marvetta lying on a bed in a bedroom. The bed was approximately two feet off of the floor. Ware stated paramedics in the bedroom were putting away their equipment. Ware described Marvetta's neck and limbs as cold and stiff to the touch. She was not breathing. He also noticed bruise marks on her face and neck and dried blood on her mouth.

Ware stated he left the bedroom and spoke to defendant in the living room. Ware testified defendant told him that early in the morning Marvetta had started crying. Edward, one of the other children, had told defendant that Marvetta had rolled off of the bed. Defendant had instructed Edward to put Marvetta back on the bed. However, Ware testified, defendant stated he had not checked on Marvetta himself.

Richard Levy, an assistant State's Attorney, and James Hanrahan, a Chicago police detective, both testified to being present on November 29, 1985, when defendant gave an oral account to police of the events of November 26, 1985. Two recorded versions of that account, both signed by defendant, were admitted into evidence.

One writing consists of Levy's handwritten summary of defendant's statement. In it, defendant stated that, on the night of the incident, he was angry because he was left by Arrington to tend to the seven children, alone. Defendant stated that, at about 10 p.m., he sent three of the children, including Marvetta, to bed, but that the children did not go to bed and were misbehaving. Marvetta was crying. Defendant prepared a bottle of milk for Marvetta. Marvetta continued to cry and defendant threw the bottle at her. Defendant described the bottle as being about eight inches tall, holding approximately 8 to 10 ounces of fluid and shaped like a bear.

The bottle struck Marvetta in her midsection and knocked her down. Defendant went to Marvetta, lifted her, standing her up by a wall and a refrigerator. Defendant stated he hit her two or three more times in the stomach with the bottle. Defendant ordered Marvetta back to bed and returned to the living room, eventually falling asleep.

At about 7 a.m. the next morning, Edward advised defendant that Marvetta had fallen out of bed. Defendant instructed Edward to pick Marvetta up and put her back into the bed. Approximately three hours later, another of the children notified defendant that Marvetta would not wake up and telephoned Arrington.

The second writing is in the form of a court reporter's transcription of a subsequent interview of defendant by Levy on November 29, 1985. Defendant's account of the sequence of events in the interview is substantially identical to that contained in Levy's handwritten summary.

Doctor Shaku Teas, an assistant medical examiner for Cook County, was qualified as an expert in forensic pathology upon the parties' stipulation and testified regarding an autopsy she performed on Marvetta. Teas testified that her internal examination of Marvetta revealed blood mixed with other fluids in the abdominal cavity and blood in the right chest cavity. Teas discovered a tear in the mesentery, the abdominal connective tissue. The duodenum, that portion of the stomach leading to the intestines, was completely separated. Marvetta's liver was lacerated, showing hemorrhage. There were contusions or bruises on the right lung and hemorrhage underlying the inner tissue of the lung.

Based on her examination, Teas concluded Marvetta's death was attributable to peritonitis resulting from multiple injuries to the mesentery, duodenum, and liver. Teas stated that Marvetta's injuries would be consistent with injuries caused to a child being punched in the stomach with a baby's bottle filled with liquid. Further, Marvetta's injuries were caused by more than one blow and would not be consistent with a fall from a bed. In Teas' opinion, the internal injuries were recent, being sustained within a 24-hour period preceding death, and could not have been caused by the work of paramedics attempting to revive Marvetta.

OPINION

Defendant first contends on appeal that the trial judge improperly limited defendant's counsel's cross-examination of Teas in violation of defendant's rights under the sixth and fourteenth amendments to the Constitution. Specifically, defendant argues the trial judge precluded an attempt by counsel to impeach Teas' testimony citing a textbook, apparently supporting, contrary to Teas' opinion, the contention that an 18-month-old child could sustain a lacerated liver and duodenum in a fall from a crib.

The record discloses that although Teas stated she was familiar with the particular textbook, *Pathology of Homicides* by Lester Adelson, and used it for reference, Teas could not say the book was one of the most commonly used sources on forensic pathology or whether it was authoritative. The trial judge sustained the State's objection to defendant's counsel's use of the textbook. The judge reasoned Teas' acknowledgment that she was aware of and had used the textbook in the past was of no consequence because Teas indicated she had not relied on the textbook in making her diagnosis in the case at hand.

In an offer of proof outside of Teas' presence, defendant's counsel

indicated he intended to impeach Teas by revealing Teas was unaware of any documented case in which an 18-month-old child died after falling from a crib as a result of peritonitis caused from lacerations of the duodenum and liver and a tear of the adrenal gland.

■■ We do not agree with the reason given for precluding defendant's counsel's cross-examination of Teas with reference to the mentioned textbook. In *Darling v. Charleston Community Memorial Hospital* (1965), 33 Ill. 2d 326, 211 N.E.2d 253, our supreme court rejected such a rule limiting cross-examination of an expert witness because the source upon which the cross-examination was based was not used by the expert being questioned. Expert testimony as a tool in the attainment of justice, the court reasoned, would be more effective if cross-examination were permitted with respect to the views of recognized authorities. (*Darling*, 33 Ill. 2d at 336, 211 N.E.2d at 259.) Instead, cross-examination of an expert with reference to a recognized text or treatise is proper where either the court has taken judicial notice of the author's competence (see *Darling*, 33 Ill. 2d at 336, 211 N.E.2d at 259) or, absent concession by the witness, the cross-examiner proves the text or treatise is authoritative (see *Darling*, 33 Ill. 2d at 336, 211 N.E.2d at 259; *People v. Behnke* (1976), 41 Ill. App. 3d 276, 283, 353 N.E.2d 684, 689).

■■ We believe the record in the instant case reveals an adequate concession by Teas that she considered the textbook, *Pathology of Homicides*, authoritative for purposes of satisfying the supreme court's concern, in *Darling*, regarding the effectiveness of expert testimony. Teas stated that, although she did not rely on the textbook, she related she was familiar with it and had used it in the past as a reference.

Nevertheless, we cannot conclude, in light of the evidence presented, that reversible error was committed at trial when defendant's counsel was precluded from closely examining Marvetta with respect to the textbook. Teas' direct testimony established specifically that Marvetta's death resulted from multiple blows to the area of her stomach, not from any single blow. Defendant admitted to striking Marvetta two or three times with the bear-shaped baby bottle filled with milk. In light of that positive evidence, we believe that even if the trial judge had permitted defendant's counsel to attempt to impeach Teas by citing a contrary case study in a textbook, that attempt would have had no effect on the ultimate determination. We therefore find the error harmless.

Defendant next argues the State failed to prove defendant possessed the requisite mental state required for murder because the

State did not prove that defendant knew that hitting Marvetta in the stomach with a bottle would cause death or created the strong probability of death or great bodily harm. See Ill. Rev. Stat. 1985, ch. 38, par. 9—1.

■ We disagree. Intent to commit the offense of murder can be implied or inferred from the character of the act. (*People v. Szerletich* (1980), 86 Ill. App. 3d 1121, 1124, 408 N.E.2d 1098, 1101.) Here, the record discloses that on November 29, 1985, the defendant, admittedly already angry at having been left to supervise seven children alone, prepared a bottle to quiet Marvetta's continued crying. The defendant, then a 21-year-old male weighing 125 pounds, threw the bottle filled with milk at Marvetta, then a 17-month-old infant weighing approximately 18 pounds, striking her in the midsection with enough force to knock her down. The defendant proceeded to stand Marvetta up and strike her in the stomach with the bottle two or three more times. We believe that evidence is sufficient to support an inference of the requisite intent and therefore refuse to disturb the trial judge's finding of guilt.

■ Defendant last contends that the prison sentence imposed by the trial judge was excessive. Defendant does not dispute the sentence was within the statutory range of 20 to 40 years. (See Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—1(a)(1)(a).) Rather, defendant argues that consideration of various mitigating factors shows his sentence constituted an abuse of discretion. In particular, defendant notes the following: existence of a potential for rehabilitation in view of his youth and absence of a prior violent criminal offense; the entrustment in him by Marvetta's mother with sole care of the seven children on November 29, 1985; the absence of evidence indicating a pattern of abuse to Marvetta; his exhibited remorse; and his cooperation with police.

We have carefully considered the mitigating circumstances in the instant case. We are cognizant, however, of the great discretion properly afforded trial judges in imposing criminal sentences and must decline to substitute, instead, our own judgment merely because we might have imposed a more lenient sentence. See *People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.

Affirmed.

COCCIA, P.J., and GORDON, J., concur.