NOTICE

Decision filed 01/22/08. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0618

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | |
|---|---|
| XON BLACKBURN *et al.*, | ) Appeal from the |
| | ) Circuit Court of |
| Plaintiffs, | ) Marion County. |
| | ) |
| and | ) |
| | ) |
| DELBERT COPPLE, CARL HEINRICHSMEYER, | ) |
| and DONALD HYATT, | ) |
| | ) |
| Plaintiffs-Appellees, | ) |
| | ) |
| v. | ) No. 04-L-25 |
| | ) |
| ILLINOIS CENTRAL RAILROAD COMPANY, | ) Honorable |
| | ) Patrick J. Hitpas, |
| Defendant-Appellant. | ) Judge, presiding. |

_____

JUSTICE SPOMER delivered the opinion of the court:

The defendant, Illinois Central Railroad Company (the Railroad), appeals from the order of the circuit court of Marion County that entered a judgment on jury verdicts in favor of plaintiffs Delbert Copple, Carl Heinrichsmeyer, and Donald Hyatt (the plaintiffs). For the reasons set forth below, we affirm the judgment of the circuit court.

FACTS

The plaintiffs are among a group of 24 plaintiffs who sued the Railroad for claims arising under the Federal Employers' Liability Act (FELA) (45 U.S.C. §51 *et seq.* (2000)), whereby they alleged they were injured when they were exposed to asbestos, diesel exhaust, and other dangerous products during the course of their employment. The plaintiffs claimed, *inter alia*, that the Railroad negligently failed to provide them with a reasonably safe place to work. The Railroad filed a motion to sever the cases for trial, and the circuit court granted

1

the motion in part by consolidating the plaintiffs' cases into groups of four for trial. The plaintiffs' cases were the second group to be tried together before a jury. The other plaintiff in their group did not participate in the trial for reasons unrelated to this appeal. The verdicts in the first group's trial were previously affirmed on appeal. *Xon Blackburn v. Illinois Central R.R. Co.*, No. 5-06-0417 (2007) (unpublished order under Supreme Court Rule 23 (166 Ill. 2d R. 23)).

Delbert Copple was 79 years old at the time of the trial. Mr. Copple worked for the Railroad continuously from 1950 to 1986 as a stockman and laborer in various facilities in and around Centralia. He testified that in his work, he was exposed to asbestos-containing products, including asbestos sleeves, gaskets, brake shoes, and firebrick. Carl Heinrichsmeyer was 62 years old at the time of the trial. Mr. Heinrichsmeyer worked for the Railroad from 1963 until 1982, also in and around Centralia. He worked at various times as a stockman, chauffeur, and store clerk, and he testified that he also handled asbestos sleeves and gaskets. Donald Hyatt was 70 years old at the time of the trial. Mr. Hyatt worked for the Railroad from 1969 to 1999, beginning at the facility in Champaign. From 1970 until 1984, Mr. Hyatt was responsible for maintaining water and steam lines at various facilities from Champaign to Effingham. During his employment, Mr. Hyatt was exposed to asbestos piping and boiler insulation.

In 2003, the plaintiffs attended a screening set up by the attorneys working for their union. After the screening, Dr. Alvin Schonfeld diagnosed the plaintiffs with asbestosis, which is defined as the scarring of the lungs created by asbestos fibers. At the trial, Dr. Schonfeld testified that the plaintiffs' asbestos exposure during their employment with the Railroad caused, in whole or in part, their injuries.

After a lengthy trial at which each side presented numerous lay and expert witnesses, the jury returned verdicts in favor of the plaintiffs, awarding $220,000 in damages to Mr.

2

Copple, $167,000 to Mr. Heinrichsmeyer, and $220,000 to Mr. Hyatt. The circuit court denied the Railroad's motions for a directed verdict, made at the close of the plaintiffs' evidence and again at the end of the trial. The circuit court denied the Railroad's posttrial motions and entered a finding pursuant to Illinois Supreme Court Rule 304(a) (210 Ill. 2d R. 304(a)). The Railroad filed a timely notice of appeal. We will set forth additional facts from the record as needed to explain our resolution of each issue on appeal.

ANALYSIS

1. Instructing the Jury on the Fear of Cancer

The Railroad argues that the circuit erred in instructing the jury on the fear of cancer. The Railroad's argument on this issue is twofold. First, the Railroad argues that the circuit court erred in refusing to instruct the jury that in order to award damages for the fear of cancer, the jury must find that the fear must significantly and detrimentally affect the ability to carry on everyday life and work. Second, the Railroad argues that there was insufficient evidence presented to warrant a jury instruction on the fear of cancer as an element of damage for each plaintiff. We will address each argument in turn.

The United States Supreme Court has held that an asbestosis claimant, upon demonstrating a reasonable fear of cancer stemming from the claimant's existing disease, can recover for that fear as a part of asbestosis-related pain-and-suffering damages in a suit brought under FELA. *Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 157, 155 L. Ed. 2d 261, 281, 123 S. Ct. 1210, 1223 (2003). However, it is incumbent upon the claimant to prove that his alleged fear is genuine and serious. *Ayers*, 538 U.S. at 157, 155 L. Ed. 2d at 281, 123 S. Ct. at 1223. In this case, the circuit court instructed the jury separately regarding each plaintiff as follows:

"If you decide for the plaintiff *** on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate him for any of

3

the following elements of damages proved by the evidence to have resulted, in whole or in part, from the negligence of the defendant, taking into consideration the nature, extent[,] and duration of the injury:

\* \* \*

The genuine and serious fear of cancer experienced and reasonably certain to be experienced in the future."

The circuit court refused the Railroad's proposed instruction, which stated: "In order to recover for fear of cancer, a plaintiff must demonstrate that his fear is genuine and serious. This means fear that significantly and detrimentally affects the ability to carry on everyday life and work." This proposed instruction was modeled after Justice Breyer's partial dissent in *Ayers*, in which he stated that he would "permit recovery where the fear of cancer is unusually severe–where it significantly and detrimentally affects the plaintiff's ability to carry on with everyday life and work." 538 U.S. at 187, 155 L. Ed. 2d at 300, 123 S. Ct. at 1239 (Breyer, J., concurring in part and dissenting in part). The Railroad argues that Justice Breyer is proposing a definition of "genuine and serious." However, he is in fact, proposing a more stringent standard than that handed down by the majority in *Ayers*. Accordingly, the circuit court did not err when it rejected the Railroad's tendered instruction and instructed the jury in accordance with the majority opinion in *Ayers*.

We now turn to the issue of whether the circuit court erred in determining that there was sufficient evidence to support a jury instruction on the fear of cancer regarding each plaintiff. Our review of the record reveals that Dr. Douglas Pohl testified that asbestos is carcinogenic and that a person who has been exposed to asbestos is at an increased risk of cancer. Dr. Schonfeld also testified that asbestosis sometimes causes cancer. Mr. Copple testified that he is concerned, even worried, about the prospect of developing cancer. Mr. Heinrichsmeyer testified that he is concerned about taking care of his family in the event that

4

he contracts the disease. Mr. Hyatt testified that cancer is on his mind all the time and that he had pneumonia in January and thought he might have been contracting cancer at that time. We find this evidence sufficient to support the circuit court's decision to instruct the jury that it could award each plaintiff damages for the fear of cancer should it find that fear to be genuine and serious.

2. Denial of the Motion for a New Trial on the Issue of Damages or a Remittitur

a. *Standard of Review*

The Railroad also argues that the circuit court erred in denying its motion for a new trial on the entire damages award and in denying its alternative motion for a remittitur on the future-medical-expense and pain-and-suffering awards. When we review a circuit court's ruling on a motion for a new trial on the issue of compensatory damages, the standard of review is whether the verdict is against the manifest weight of the evidence. *Hollowell v. Wilder Corp. of Delaware*, 318 Ill. App. 3d 984, 990 (2001) (citing *Maple v. Gustafson*, 151 Ill. 2d 445, 454 (1992)). "A verdict is against the manifest weight when it is arbitrary, unreasonable, or not based upon any evidence." *Hollowell*, 318 Ill. App. 3d at 990 (citing *Maple*, 151 Ill. 2d at 454). The standard of review for the circuit court's ruling on a motion for a remittitur is whether the circuit court abused its discretion. *Hollowell*, 318 Ill. App. 3d at 991.

In addition to the standard of review, it is important to note several principles that are applicable when reviewing a damages award. "The determination of damages is a question reserved to the trier of fact, and a reviewing court will not lightly substitute its opinion for the judgment rendered in the trial court." *Richardson v. Chapman*, 175 Ill. 2d 98, 113 (1997). "An award of damages will be deemed excessive if it falls outside the range of fair and reasonable compensation or results from passion or prejudice, or if it is so large that it shocks the judicial conscience." *Richardson*, 175 Ill. 2d at 113. "When reviewing an award

of compensatory damages for a nonfatal injury, a court may consider, among other things, the permanency of the plaintiff's condition, the possibility of future deterioration, the extent of the plaintiff's medical expenses, and the restrictions imposed on the plaintiff by the injuries." *Richardson*, 175 Ill. 2d at 113-14.

b. *The Identical Awards*

Before turning to our analysis of the specific items of damages awarded to each of the plaintiffs, we recognize that in several places in the Railroad's brief, the Railroad points to the fact that the jury made identical awards to the plaintiffs for the fear of cancer, disability, and pain and suffering and identical awards to Mr. Copple and Mr. Hyatt for future medical expenses. The Railroad directs this court's attention to that fact in support of its arguments that the trials should have been severed; that the jury should have been instructed on a definition of "genuine and serious" in relation to the fear of cancer; and that without evidence of life expectancy the jury should not have been instructed to consider, in assessing the awards for future medical expenses, how long the plaintiffs are likely to live. Although we have analyzed these specific issues in other parts of this opinion and found no error, we find it provident to consider whether the identical awards, in and of themselves, would necessitate a new trial on damages.

We find no authority in Illinois, and the Railroad points to none, that stands for the proposition that identical awards, in and of themselves, are reversible error. In light of this, we have examined how this issue has been handled by other jurisdictions. In so doing, we were persuaded by the reasoning of the Kansas Supreme Court, which stated as follows:

"The ' ["]*only* standard for evaluation is such *amount* as reasonable persons estimate to be fair compensation for the injuries suffered.["] ' (Emphasis added.) *Morris v. Francisco*, 238 Kan. [71,] 77-78[, 708 P.2d 498, 503-04 (1985)] (quoting *Ratterree v. Bartlett*, 238 Kan. [11,] 23[, 707 P.2d 1063, 1072 (1985)]). There is no

6

per se rule which discredits identical awards, and there is no provision in current law for comparison of one plaintiff's recovery with another's to serve as the basis for overturning a jury's verdict." *Kuhl v. Atchison, Topeka & Santa Fe Ry. Co.*, 250 Kan. 332, 344, 827 P.2d 1, 9 (1992).

The Kansas Supreme Court went on to explain that if reasonable persons could estimate the damages of each individual plaintiff to be a fair compensation for the injuries suffered, without comparing them to each other, then the identical awards should be upheld. *Kuhl*, 250 Kan. at 344, 827 P.2d at 9. Similar conclusions have been reached by the Maine Supreme Court, as well as the United States Court of Appeals for the Ninth Circuit. See *Harris v. Soley*, 2000 ME 150, ¶27, 756 A.2d 499, 508 (2000); *Lambert v. Ackerley*, 180 F.3d 997, 1011 (9th Cir. 1999). We find this analysis persuasive for our purposes here, especially in light of the fact that all three plaintiffs were similarly diagnosed with asbestosis and had similar physical manifestations of this disease, presenting with symptoms of shortness of breath and some limitations on their levels of exertion. Although Mr. Copple was 79 years old at the time of the trial, while Mr. Heinrichsmeyer was 62 and Mr. Hyatt was 70, a reasonable jury could conclude that because longevity is uncertain, similar awards for future damages were justified based on the similarity of their asbestosis-related conditions. Accordingly, we decline to substitute our judgment for that of the jury solely on the basis of identical awards.

### c. *Future Medical Expenses*

We begin our analysis of the particular verdicts at issue with the award for future medical expenses. The jury awarded Mr. Copple and Mr. Hyatt each $100,000, and it awarded Mr. Heinrichsmeyer $47,000 for future medical expenses. We cannot say that these awards are against the manifest weight of the evidence or that the circuit court abused its discretion in denying the motion for a remittitur with regard to future medical expenses. Dr.

7

Schonfeld testified that because the plaintiffs were diagnosed with asbestosis, they would need periodic X rays, medical exams, and colonoscopies. Similarly, Dr. Pohl testified that an asbestosis patient must have routine pulmonary testing throughout his life. Mr. Copple testified that he plans to monitor his condition with his family doctor. Mr. Heinrichsmeyer testified that he also plans to monitor his health. Mr. Hyatt testified, without objection, that his doctor told him he would need a chest X ray every year.

The Railroad argues that these verdicts should be reversed because the plaintiffs did not produce evidence of any specific medical expenses that they would incur in the future other than "generic references" to periodic visits to a physician for a chest X ray. However, "the trier of fact enjoys a certain degree of leeway in awarding compensation for medical costs that, as shown by the evidence, are likely to arise in the future but are not specifically itemized in the testimony." *Richardson*, 175 Ill. 2d at 112. The Railroad also points to the plaintiffs' counsel's statement during closing argument that a "fair figure" for future medical expenses would be $5,000. However, " '[a] jury's award of a verdict higher than that requested by counsel does not, by itself, indicate that the jury acted out of passion or prejudice.' " *Tri-G, Inc. v. Burke, Bosselman & Weaver*, 222 Ill. 2d 218, 250-51 (2006) (quoting *Fedt v. Oak Lawn Lodge, Inc.*, 132 Ill. App. 3d 1061, 1072 (1985)).

We find that the amounts awarded fall within a range of fair and reasonable compensation for periodic X rays, exams, and other diagnostic testing that the evidence shows the plaintiffs will face due to the asbestosis diagnosis. In addition, these amounts are not so large that we can say that they are based on juror passion or prejudice or that they shock the judicial conscience. Accordingly, we will not substitute our judgment for that of the jury. The circuit court did not err in allowing the jury's verdict with regard to future medical expenses to stand.

8

d. *Pain and Suffering, Disability, and Fear of Cancer*

We now turn to the jury's award to the plaintiffs for pain and suffering and disability and fear of cancer. The jury awarded each of the plaintiffs $15,000 for pain and suffering, $75,000 for disability, and $30,000 for fear of cancer. Dr. Alvin Schonfeld testified that the plaintiffs suffered from asbestosis, a permanent condition, which was caused, in whole or in part, by their employment with the Railroad. Dr. Schonfeld testified that the plaintiffs' complaints of shortness of breath were consistent with his findings of asbestosis and that the plaintiffs were at an increased risk of developing cancer as a result of their exposure to asbestos. Dr. Donald Breyer testified that the plaintiffs' chest X rays contained varying degrees of abnormalities consistent with asbestosis. Mr. Copple testified that he gets winded when he works out at the gym and when walking up stairs. Mr. Heinrichsmeyer testified that just about every activity makes him short of breath. He testified that he is not able to work the same hours he used to work at his tavern, due to shortness of breath. Although he plays golf, he must use a golf cart. Mr. Hyatt testified that he would have to stop halfway up the stairs due to shortness of breath. Dr. Pohl testified that the plaintiffs' complaints were consistent with his diagnosis of asbestosis. The plaintiffs testified that they experience shortness of breath to varying degrees, and they gave some indication on how this impacts their lives.

In addition to the testimony of the plaintiffs, expert testimony was presented that asbestosis has the very real potential to worsen in the future. In addition, expert testimony was presented regarding the increased risk of cancer, and the plaintiffs testified regarding the concern and worry this caused them. As explained elsewhere in this opinion, the jury was correctly instructed on these elements of damages, and it was within its discretion to assess a monetary value for these noneconomic items of damage. Because we cannot say that the amounts awarded fall outside the range of fair and reasonable compensation or result from

9

passion or prejudice or that the amounts awarded are so large that they shock the judicial conscience, we will not disturb the award. Accordingly, the circuit court did not err when it denied the Railroad's motion for a new trial on damages or a remittitur.

**[The following material is nonpublishable under Supreme Court Rule 23.]**

### 3. Instructing the Jury on Negligence and Damages

#### a. *Standard of Review*

The Railroad argues that the circuit court erred by instructing the jury on the issues of negligence and damages. "A litigant has the right to have the jury clearly and fairly instructed upon each theory which was supported by the evidence." *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 100 (1995) (citing *Ervin v. Sears, Roebuck & Co.*, 65 Ill. 2d 140, 145 (1976)). "However, it is error to give an instruction not based on the evidence." *Leonardi*, 168 Ill. 2d at 100. "The question of what issues have been raised by the evidence is within the discretion of the trial court." *Leonardi*, 168 Ill. 2d at 100. "The evidence may be slight; a reviewing court may not reweigh it or determine if it should lead to a particular conclusion." *Leonardi*, 168 Ill. 2d at 100. "The test in determining the propriety of tendered instructions is whether the jury was fairly, fully, and comprehensively informed as to the relevant principles, considering the instructions in their entirety." *Leonardi*, 168 Ill. 2d at 100.

#### b. *Instructions on Negligence*

We note that heading "L" in the Railroad's brief includes a statement that the circuit court abused its discretion in instructing the jury regarding the Railroad's negligence. However, the Railroad's brief is devoid of any argument regarding any error the circuit court might have made in instructing the jury on negligence. Pursuant to Illinois Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), points not argued in the appellant's brief are waived. Moreover, even if the Railroad had not waived the issue of the jury instructions on

10

negligence, there is ample evidence in the record upon which the circuit court could base those instructions, as we have explained below with regard to the circuit court's denial of the Railroad's motion for a judgment notwithstanding the verdict on the issue of negligence. Accordingly, the circuit court did not err in instructing the jury with regard to negligence.

c. *Instructions on Future Medical Expenses*

With regard to damages, the Railroad argues that the circuit court abused its discretion when it instructed the jury it could award the plaintiffs damages for future medical expenses. As previously noted with regard to the motion for a new trial on damages, our review of the record reveals that there was enough evidence for the circuit court to so instruct the jury. Dr. Schonfeld testified that because the plaintiffs were diagnosed with asbestosis, they would need periodic X rays, medical exams, and colonoscopies. Similarly, Dr. Pohl testified that an asbestosis patient must have routine pulmonary testing throughout his life. Copple testified that he plans to monitor his condition with his family doctor. Heinrichsmeyer testified that he also plans to monitor his health. Hyatt testified, without objection, that his doctor told him he would need a chest X ray every year. From this testimony, we conclude that there was "some evidence" to warrant a future-medical-expense instruction. See *Mikus v. Norfolk & Western Ry. Co.*, 312 Ill. App. 3d 11, 33 (2000) (holding that expert testimony that future medical treatment is required is sufficient to warrant a future-medical-expense instruction). Accordingly, the circuit court did not err when it instructed the jury that it could award future medical expenses to the plaintiffs.

d. *Instructions on Present Cash Value*

In a related argument, the Railroad argues that the circuit court erred when it instructed the jury that it must reduce any future-medical-expense award to present cash value but failed to instruct the jury on the requisite methods to calculate present cash value. The circuit court instructed the jury on present cash value as follows:

11

"In computing the damages arising in the future because of future medical expenses[,] you must determine their present cash value. 'Present cash value' means the sum of money needed now, which, when added to what that sum may reasonably be expected to earn in the future, will equal the amount of the expenses at the time in the future when the expenses must be paid.

Damages for pain and suffering and disability are not reduced to present cash value."

This instruction was taken verbatim from Illinois Pattern Jury Instructions, Civil, No. 34.02 (2006) (hereinafter IPI Civil (2006)). There is no requirement that actuarial or statistical evidence be present to guide the jury in its determination of present cash value when this instruction is given. See *Robinson v. Greeley & Hansen*, 114 Ill. App. 3d 720, 725 (1983); *Crabtree v. St. Louis-San Francisco Ry. Co.*, 89 Ill. App. 3d 35, 39 (1980). The Railroad does not contest the definition of "present cash value" contained in the instruction, does not claim the jury improperly computed present cash value, and did not submit another formula that it believed better explained the method of arriving at present cash value. See *Robinson*, 114 Ill. App. 3d at 725. We recognize, as did the courts in *Robinson* and *Crabtree*, that actuarial evidence is often helpful to juries in reducing damages to monetary figures. *Robinson*, 114 Ill. App. 3d at 725; *Crabtree*, 89 Ill. App. 3d at 39. However, that evidence could have been presented by the Railroad had it felt that it was necessary. See *Robinson*, 114 Ill. App. 3d at 725; *Crabtree*, 89 Ill. App. 3d at 39. Accordingly, the circuit court did not err in instructing the jury on present cash value.

e. *Instructions on Pain and Suffering and Disability*

The Railroad also argues that the circuit court erred in instructing the jury on pain and suffering and disability. However, as set forth above, we find ample evidence to support the jury's verdicts for the plaintiffs for both of these elements of damage. Accordingly, we find

12

no error in the circuit court's instructions in these areas.

### f. *Instructions Regarding the Plaintiffs' Longevity*

With regard to the instructions on future damages, the Railroad also takes issue with the circuit court instructing the jury in accordance with IPI Civil (2006) No. 34.01. That instruction provided as follows:

> "If you find that a plaintiff is entitled to damages arising in the future because of injuries, you must determine the amount of these damages which will arise in the future.
>
> If these damages are of a continuing nature, you may consider how long they will continue. If these damages are permanent in nature, then in computing these damages you may consider how long the plaintiff is likely to live."

The Railroad contends it was error to give this instruction without mortality tables in evidence to instruct the jury on how long the plaintiffs are likely to live. However, the Railroad points to no authority, and our research reveals none, that requires those tables to be admitted into evidence prior to instructing the jury that it may consider how long the plaintiff is likely to live in assessing future damages. In fact, IPI Civil (2006) No. 34.04 instructs the jury on the use of mortality tables if and when they are entered into evidence. That instruction states that the jury is only to use mortality tables "in connection with other evidence relating to the probable life expectancy of the plaintiff in this case, including evidence of his occupation, health, habits, and other activities, bearing in mind that some persons live longer and some persons less than the average." IPI Civil (2006) No. 34.04. As is the case with the actuarial data, the Railroad was free to offer mortality tables into evidence. The circuit court did not err in giving IPI Civil (2006) No. 34.01.

13

4. Denial of the Motion for a Judgment Notwithstanding the Verdict

a. *Standard of Review*

The Railroad argues that the trial court erred in denying its motion for a judgment notwithstanding the verdict (*n.o.v.*) because the plaintiffs failed to present any evidence that the Railroad acted negligently toward them or that they were injured as a result of any negligent conduct. The Railroad further argues that the plaintiffs failed to offer any evidence of pain, suffering, or loss of a normal life expectancy. To analyze these issues on appeal, we begin with the standard the circuit court must employ in ruling on a motion for a judgment *n.o.v.*, as well as our standard of review. "[A] judgment *n.o.v.* is properly entered in those limited cases where 'all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand.' " *Maple v. Gustafson*, 151 Ill. 2d 445, 453 (1992) (quoting *Pedrick v. Peoria & Eastern R.R. Co.*, 37 Ill. 2d 494, 510 (1967)). "Put another way, 'a motion for judgment [notwithstanding the verdict] presents "a question of law as to whether, when all of the evidence is considered, together with all reasonable inferences from it in its aspect most favorable to the plaintiffs, there is a total failure or lack of evidence to prove any necessary element of the [plaintiff's] case." ' " *Blount v. Stroud*, Nos. 1-06-2428, 1-06-2968, slip op. at 9 (September 28, 2007) (quoting *York v. Rush-Presbyterian-St. Luke's Medical Center*, 222 Ill. 2d 147, 178 (2006) (quoting *Merlo v. Public Service Co. of Northern Illinois*, 381 Ill. 300, 311 (1942))). Appellate courts employ a *de novo* standard of review when reviewing decisions on motions for a judgment *n.o.v. McClure v. Owens Corning Fiberglas Corp.*, 188 Ill. 2d 102, 132 (1999).

b. *Liability*

With regard to the Railroad's argument that the circuit court erred in denying its motion for a judgment *n.o.v.* because the plaintiffs failed to present evidence on the issue of

14

liability, FELA provides as follows:

> "Sec. 1 of [FELA] makes the carrier liable in damages for any injury or death 'resulting in whole or in part from the negligence' of any of its 'officers, agents, or employees.' *** At common law the duty of the employer to use reasonable care in furnishing his employees with a safe place to work was plain. [Citation.] That rule is deeply engrained in federal jurisprudence. [Citations.] *** [I]t is a duty which becomes 'more imperative' as the risk increases. *** It is that rule which obtains under [FELA]." *Bailey v. Central Vermont Ry.*, 319 U.S. 350, 352-53, 87 L. Ed. 1444, 1447, 63 S. Ct. 1062, 1063-64 (1943).

The most basic question for the court in every FELA case is "whether the proofs justify with reason the conclusion that employer negligence played any part, even the slightest, in producing the injury or death for which damages are sought." *Rogers v. Missouri Pacific R.R. Co.*, 352 U.S. 500, 506, 1 L. Ed. 2d 493, 499, 77 S. Ct. 443, 448 (1957). The quantum of evidence necessary to support a jury verdict of liability in a FELA case is "much less than in an ordinary negligence case." *Lewis v. Cotton Belt Route-St. Louis Southwestern Ry. Co.*, 217 Ill. App. 3d 94, 112 (1991). That causes other than employer negligence have played a role in the plaintiff's injury does not preclude a finding of negligence against the employer. *Rogers*, 352 U.S. at 506, 1 L. Ed. 2d at 499, 77 S. Ct. at 448.

Our review of the record on appeal leaves no doubt that the plaintiffs submitted evidence from which the jury could determine that the Railroad knew or should have known that the plaintiffs were exposed to harmful levels of asbestos during their employment and that they were injured as a result of this exposure. Without objection, the plaintiffs introduced exhibits that indicated that the Railroad was aware of the risks of asbestos exposure as early as the mid-1930s, that asbestos was dangerous whether workers handled it themselves or were only near others using it, and that certain safety precautions could

15

lessen those risks. Lyndle Burton, the Railroad's manager of industrial hygiene, acknowledged that, from an industrial hygiene perspective, a failure to implement the safety precautions recommended in the exhibits was unreasonable based on the knowledge reflected in the exhibits that asbestos is dangerous.

Charles Garrett, the Railroad's senior risk mitigation officer, testified that he investigates claims against the Railroad for lung injuries from substances such as asbestos. He testified that the Railroad's discovery responses included statements that it did not issue any written warnings to its employees about the hazards of asbestos exposure, and the Railroad did not deny that asbestos was used in the workplaces where the plaintiffs were employed. The plaintiffs testified at length and in detail regarding how they were exposed to asbestos materials and they were present when asbestos dust was in the air in the various facilities where they worked. The plaintiffs also testified that the Railroad did not provide them with respirators to filter out the dust, did not tell them that exposure to asbestos dust might be dangerous, and did not advise them to take any safety precautions, such as wetting down the dust, when working with or around asbestos.

The plaintiffs' expert witness, Dr. Michael Ellenbecker, a certified industrial hygienist, testified that the medical and surgical section of the Association of American Railroads, of which the Railroad was a member, recognized as early as 1937 that asbestos used in the Railroad's workplaces posed a hazard. He stated that the railroad industry recognized the concept of bystander exposure to asbestos as early as 1940 and that the plaintiffs were exposed to very high and unsafe levels of asbestos during their employment with the Railroad, even though methods to reduce exposure to asbestos were available. He concluded that the Railroad did not provide the plaintiffs with a reasonably safe place to work. There is no doubt from our review of the record that the plaintiffs produced sufficient evidence of FELA liability to withstand a motion for a judgment *n.o.v.*

16

c. *Damages*

In addition, we cannot say that the plaintiffs failed to produce sufficient evidence of damages to withstand a motion for a judgment *n.o.v.* As explained above, we find ample evidence in the record to support the jury's verdicts. Because the plaintiffs put forth some evidence for each element necessary to prove their FELA claims, we find that the circuit court did not err in denying the Railroad's motion for a judgment *n.o.v.*

## 5. Denial of the Motion to Sever

The Railroad argues that the circuit court erred by failing to sever the plaintiffs' trials because their claims lacked the requisite commonality to justify consolidation. Specifically, the Railroad contends that the plaintiffs were allegedly exposed to asbestos when they worked at different facilities, during different time periods, for markedly different durations, in different trades, through the use of different products. "An action may be severed, and actions pending in the same court may be consolidated, as an aid to convenience, whenever it can be done without prejudice to a substantial right." 735 ILCS 5/2-1006 (West 2004). The trial court has broad discretion in matters of consolidation and severance, which discretion is to be guided by considerations of convenience and the rights of the parties. *Needy v. Sparks*, 51 Ill. App. 3d 350, 355-56 (1977). "Where separate causes are of the same nature, involve the same or like issues[,] and depend largely upon the same evidence, consolidation is not an abuse of discretion." *Ad-Ex, Inc. v. City of Chicago*, 247 Ill. App. 3d 97, 103 (1993). Indeed, in at least one instance, this court has found consolidation proper with regard to three personal injury claims and one wrongful death claim where the jury was properly instructed, the evidence was not confusing or misleading, and the record did not show any prejudice to the defendant. *Pickering v. Owens-Corning Fiberglas Corp.*, 265 Ill. App. 3d 806, 811-12 (1994). "Inherent in the power to consolidate is the authority to integrate evidence at a joint trial in the interest of convenience and economy." *Pickering*,

265 Ill. App. 3d at 811.

We agree with the plaintiffs that the trial of their cases together was not unfair to the Railroad. The evidence regarding the Railroad's knowledge of the hazards of asbestos in the workplace and the available safety measures for reducing those risks was the same for all three plaintiffs. The Railroad's knowledge of these hazards was not dependent upon location, so the fact that the plaintiffs may have worked at different locations is not dispositive of the severance issue. We recognize that the jury had to assess the damages issues for each of the three plaintiffs separately. However, we find that the trial court balanced this factor with the need for convenience in the administration of justice and determined that the jury could handle the separate damages of three or four plaintiffs at the same time without causing substantial prejudice to the Railroad. The jury was properly instructed that it was to determine the cases of each plaintiff separately on its own merits. We find that the decision to allow a consolidated trial of three plaintiffs was not an abuse of discretion.

6. Denial of Motion for Leave to File Third-Party Complaint for Contribution

On March 9, 2006, less than three months before the start of the jury trial under review, the Railroad filed a motion for leave to file a third-party complaint against nine asbestos manufacturers and one insurance company. In the motion, the Railroad alleged that it should be allowed to file the third-party complaint because "it is necessary to ensure that [the Railroad] does not pay more than its pro rata share of any responsibility it may have for plaintiffs' claimed injuries." The Railroad alleged that it had not filed the motion earlier because it "needed to conduct an investigation with respect to those companies or entities that may be responsible for plaintiffs' claimed injuries." The Railroad blamed its late filing on the plaintiffs, who "did not provide information in response to defendant's discovery requests regarding other lawsuits until August 2005." The Railroad alleged that it "then, at its own considerable expense, traveled to Florida and reviewed those files to obtain copies of all

18

relevant pleadings." On March 15, 2006, the circuit court denied the motion as untimely with regard to the trial of the plaintiffs, although it later granted the motion for future trials.

Although the trial court may allow a FELA defendant to file a third-party complaint for contribution (*Norfolk & Western Ry. Co. v. Ayers*, 538 U.S. 135, 162, 155 L. Ed. 2d 261, 284, 123 S. Ct. 1210, 1226 (2003)), the circuit court is justified in exercising its discretion to deny leave to file a third-party complaint when a late filing would delay the underlying trial. *Grimming v. Alton & Southern Ry. Co.*, 204 Ill. App. 3d 961, 977-78 (1990). The appropriate time for the Railroad to have filed its third-party complaint for contribution was within the time for it to file its answer. See *Grimming*, 204 Ill. App. 3d at 977.

In its motion, the Railroad did not assert that when it filed its answer in April 2004, it did not know or have records of the manufacturers providing asbestos products to the facilities at which the plaintiffs worked. When the Railroad filed its answer, it failed to file a request for an extension of time within which to file its third-party complaint. Rather, the Railroad waited until almost two years after it had filed its answer and less than three months before the trial under review to request leave to file a third-party complaint. As in *Grimming*, if the circuit court had granted the Railroad's motion for the trial under review, 10 additional third-party defendants would have been brought into the case, necessarily delaying the trial. The fact that the circuit court granted the motion for subsequent trials substantiates the fact that the circuit court's denial was based on the delay. It was not an abuse of the circuit court's discretion for the court to determine that it was a prejudice to these plaintiffs on the immediate trial docket to grant the motion for leave to file a third-party complaint.

7. Exclusion of Evidence of Absence of Warnings From Asbestos Manufacturers

The Railroad's fourth issue on appeal is that the circuit court erred in granting the plaintiffs' motion *in limine* to exclude evidence that the manufacturers of the asbestos-

19

containing products used in the Railroad's facilities did not include warnings on their packages. The Railroad argues that evidence regarding warnings is relevant to the issue of foreseeabililty and, therefore, properly admitted. " 'Whether granted or denied, a motion *in limine* itself does not preserve the issue for appellate review.' " *Bergman v. Kelsey*, 375 Ill. App. 3d 612, 635 (2007) (quoting *Sullivan-Coughlin v. Palos Country Club, Inc.*, 349 Ill. App. 3d 553, 561 (2004)). " 'Rather, to preserve an error in the exclusion of evidence, the proponent of the evidence must make an adequate offer of proof in the [circuit] court.' " *Bergman*, 375 Ill. App. 3d at 635 (quoting *Sullivan-Coughlin*, 349 Ill. App. 3d at 561). " 'Failure to make such offer of proof results in waiver of the issue on appeal.' " *Bergman*, 375 Ill. App. 3d at 635 (quoting *Sullivan-Coughlin*, 349 Ill. App. 3d at 561).

Here, as set forth in the Railroad's reply brief, the only offer of proof that the Railroad made concerning warnings on asbestos products was during the video evidence deposition of the plaintiffs' expert industrial hygienist, Michael J. Ellenbecker. During this deposition, the Railroad presented Mr. Ellenbecker with a document that, according to the Railroad, dealt with Kaylo pipe insulation, an insulating product made by Owens-Corning in the 1950s. The Railroad had Mr. Ellenbecker read some writing on the document that stated "non[]irritating to the skin and non[]toxic." We find that, even if evidence of warnings on asbestos products was relevant to the issue of foreseeabililty, the Railroad failed to lay the proper foundation for the admission of this evidence within its offer of proof. The offer of proof did not set forth any evidence tending to prove that the Railroad used that particular product, when the Railroad used the product, that anyone at the Railroad saw the statement on the exhibit, or whether the Railroad relied on the statement. Accordingly, it was not an abuse of discretion to exclude the evidence set forth in the offer of proof. We find the issue of admissibility waived for all other direct evidence of warnings on asbestos products, because absent an offer of proof, there is no way to determine whether a proper foundation for the admission

20

of that evidence was established.

8. Sustaining Objection to Recross-Examination of Dr. Pohl on Lack of Warnings

The Railroad also argues that the circuit court erred in sustaining an objection to the Railroad's cross-examination of the plaintiffs' expert, Dr. Douglas Pohl, regarding the absence of warnings on asbestos products until the 1960s, after Dr. Pohl testified to that effect on direct examination. On direct examination, the following colloquy occurred between counsel for the plaintiffs and Dr. Pohl:

"Q. In 1969, Don Hyatt started working at a job for the *** Railroad where he would remove asbestos pipe covering and reapply it, sometimes make this mud that you've talked about and those sorts of activities. What is your opinion, sir, based upon a reasonable degree of medical certainty as to whether it was generally known by 1969 that those types of activities carried a risk of asbestos disease?

A. Of course it was. The warnings were starting to go on products in 1964. So, clearly, industry was well aware of the dangers and they were actually putting warning labels on the products. The problem was and was recognized that if not all the products had the warnings or the products were delivered to the workers without warnings–

Q. Let me interrupt you there, sir."

The Railroad did not object or ask that Dr. Pohl's answer be stricken. After the direct examination ended, the Railroad conducted a brief cross-examination of Dr. Pohl with respect to his credentials, his possible bias as a hired expert witness who testifies primarily on behalf of plaintiffs, his lack of specific knowledge of the plaintiffs' specific histories of exposure and medical conditions, and other matters unrelated to the product-warnings issue. On redirect, counsel for the plaintiffs questioned Dr. Pohl only on issues elicited by the Railroad on cross-examination. On recross-examination, the Railroad stated as follows:

21

"One last area, Your Honor. You mentioned, Dr. Pohl, that when you talked about the scientific literature[,] warnings from manufacturers didn't come in until the 1960[]s and early '70[]s–"

At that time, the attorney for the plaintiffs objected on the basis that the questioning violated the circuit court's order *in limine*. The attorney for the Railroad argued that the plaintiffs opened the door to this questioning by eliciting information on the warnings issue on direct. However, he did not make an offer of proof. From the record, it appears that counsel was going to reiterate what Dr. Pohl had testified to on direct, that manufacturers began to put warnings on their products in the 1960s. We can only guess what the remaining portion of counsel's question was going to be. This, again, highlights the importance of making an adequate offer of proof. "When a party seeks to have a reviewing court determine whether the trial court's evidentiary rulings improperly restricted the examination of a witness, the record must be clear regarding what the witness'[s] testimony would have been." *Holder v. Caselton*, 275 Ill. App. 3d 950, 955 (1995). The purpose and importance of an offer of proof have been described as follows:

> " '[O]ffers of proof are designed to eliminate such speculation and not only to give the trial court the opportunity to better understand the nature of the proffered evidence–and thereby reevaluate its prior ruling–but also to give courts of review the opportunity to see precisely the nature of the evidence the appellant complains the trial court improperly excluded.' " *Holder*, 275 Ill. App. 3d at 955 (quoting *People v. Land*, 241 Ill. App. 3d 1066, 1086 (1993)).

Because the Railroad failed to make an adequate offer of proof at the trial, this court cannot know the exact nature of the evidence the Railroad claims the circuit court erroneously excluded. See *Holder*, 275 Ill. App. 3d at 956. We decline to speculate about what question counsel was attempting to ask Dr. Pohl and what Dr. Pohl's testimony would

22

have been. Accordingly, we have no basis upon which to conclude that the circuit court erred in excluding the recross-examination of Dr. Pohl.

9. Excluding Evidence of Customs and Practices of Other Companies or Industries

The Railroad argues that the circuit court erred in excluding evidence of customs and practices of other companies or industries in dealing with the dangers associated with asbestos at the time of the plaintiffs' employment. The circuit court granted the plaintiffs' motion *in limine* to exclude this evidence. However, the Railroad did not make any offer of proof regarding this evidence. As explained above with regard to the evidence of the lack of warnings on asbestos-containing products, there is no way for this court to review the propriety of the circuit court's ruling on this issue because there is no way of knowing what the evidence would have shown. Accordingly, we find this issue waived.

10. Allowing Evidence of the Diagnosis of a Nonplaintiff

The Railroad argues that the circuit court erred by allowing evidence of the specific diagnosis of a plaintiff not involved in the trial during the plaintiffs' cross-examination of the Railroad's expert radiologist, Brent Harrison, M.D. On direct examination, Dr. Harrison testified that based on his review of the plaintiffs' chest X rays, they did not truly have the asbestos-related disease with which they had been diagnosed by Dr. Schonfeld. During cross-examination, counsel for the plaintiffs established that Dr. Harrison had been acquainted with defense counsel for several years. Counsel then stated to Dr. Harrison that he wished to review the diagnoses set forth in Dr. Harrison's reports with regard to other injured claimants referred to Dr. Harrison by counsel for the Railroad. The Railroad objected on the basis of relevance, and the circuit court overruled the objection. The Railroad requested a continuing objection, which the circuit court noted. Counsel for the plaintiffs then proceeded to verify with Dr. Harrison that his reports on several other injured claimants stated, "[T]here is no evidence of active disease and nothing to suggest previous occupational

23

exposure." Dr. Harrison answered each leading question in the affirmative but kept interjecting that there was more in the reports' summaries than counsel was suggesting.

Counsel for the plaintiffs then asked the same question about Dr. Harrison's report on Daniel Hogan, a nonplaintiff associated with a previous trial group in this matter. Dr. Harrison again verified that he had reached the same conclusion–that "there is no evidence of active disease and nothing to suggest previous occupational exposure"–but again interjected that there was more written in Mr. Hogan's summary than counsel for the plaintiffs had read. Counsel then stated, "Right, because Dan Hogan had cancer and had part of his lung removed, isn't that true?" The Railroad then objected, again on the basis of relevance. The circuit court did not rule on this objection, and the questioning continued concerning another claimant.

According to the Railroad, the circuit court should have sustained the Railroad's objection and stricken the question concerning Mr. Hogan from the record. However, the plaintiffs correctly point out that the Railroad did not properly preserve this error for review because it failed to obtain a ruling on its objection. See *Harris Trust & Savings Bank v. Abraham-Zwirn*, 314 Ill. App. 3d 527, 540 (2000) (citing *People v. Waller*, 67 Ill. 2d 381, 386 (1977)). In addition, we may consider this issue waived pursuant to Illinois Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), because the Railroad cites no authority for its position. See also *Piasa Motor Fuels v. Industrial Comm'n*, 368 Ill. App. 3d 1197, 1205 (2006). Accordingly, we find that the Railroad has waived this issue on appeal.

Moreover, "[a] reviewing court will grant reversal based on evidentiary rulings only when the error was substantially prejudicial and affected the outcome of the trial." *Bachman v. General Motors Corp.*, 332 Ill. App. 3d 760, 785 (2002). "The burden is on the party seeking reversal to establish prejudice." *Bachman*, 332 Ill. App. 3d at 785. We do not believe that the Railroad has met its burden to establish such prejudice. The Railroad's

contention in this regard is that Mr. Hogan's condition bolstered the plaintiffs' claims of their alleged fear of cancer. However, even absent the question from counsel regarding a nonplaintiff's cancerous condition, the Railroad introduced credible evidence, in the form of expert testimony, that a person with asbestosis is at an increased risk of cancer. Accordingly, we cannot find that the question affected the outcome of the trial, and we decline to reverse the judgment of the circuit court on this basis.

11. Excluding Evidence of Other Medical Conditions of the Plaintiffs

The Railroad also claims that the circuit court erred when it granted the plaintiffs' motion *in limine* to exclude evidence of their medical conditions that were not alleged to be asbestos-related. However, the Railroad fails to cite to the record to direct this court to any offer of proof made by the Railroad at the trial regarding evidence of any of the other medical conditions it sought to have admitted. This is a violation of Illinois Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), which requires that the argument portion of the appellant's brief include citation of the pages of the record relied on. In addition, we note that the Railroad's brief incorrectly describes the circuit court's ruling. The circuit court granted the plaintiffs' motion *in limine* to exclude "any reference or evidence that any plaintiff suffered from any disease other than those claimed herein *unless defendant can first lay a proper foundation that the other illness or disease is connected to the plaintiff's currently claimed illness or symptoms*." (Emphasis added.) The circuit court's ruling was a correct reflection of the law. The Illinois Supreme Court has held that such a foundation is necessary before introducing evidence of other injuries. See *Voykin v. Estate of DeBoer*, 192 Ill. 2d 49, 59 (2000). Without an adequate offer of proof, neither the circuit court nor this court has any way of knowing whether the Railroad could establish an adequate foundation for the evidence it sought to introduce or whether expert testimony was necessary to establish the relationship between the plaintiffs' complaints and their other injuries and

25

conditions.  See *Voykin*, 192 Ill. 2d at 59.  Hence, we find this issue waived with regard to any evidence for which there was no offer of proof and for which the Railroad fails to cite to the record.

Although waived for a failure to cite to the record on appeal, our review of the record establishes that the Railroad did attempt to ask Mr. Hyatt on cross-examination whether he has high blood pressure.  The plaintiffs objected, citing the circuit court's order *in limine* which required that a proper foundation be established for the admission of evidence of another medical condition.  During a sidebar, the Railroad explained to the circuit court that it wished to ask Mr. Hyatt whether anyone had ever told him his high blood pressure could be attributed to his shortness of breath and whether he was following his doctor's advice about taking medication for high blood pressure.  The circuit court asked the Railroad if it had any witness who could attribute high blood pressure to shortness of breath. The Railroad replied: "I don't know, Your Honor.  I was just going to ask him if anybody ever told him that."  The plaintiffs pointed out that the Railroad had disclosed no expert opinion on the matter.  The circuit court sustained the objection.  We find that this was proper because the Railroad was unable to establish the requisite foundation under *Voykin*.  192 Ill. 2d at 59.

12. Denying the Railroad's Motion to Quash the Subpoena of Lyndle Burton

The Railroad argues that the circuit court erred by denying the Railroad's motion to quash the plaintiffs' Illinois Supreme Court Rule 237 (210 Ill. 2d R. 237) subpoena, which compelled the testimony of the Railroad's employee, Lyndle Burton.  Rule 237(b) provides that the appearance at a trial of a person who at the time of the trial is an officer, director, or employee of a party may be required by serving the party with a notice designating the person who is required to appear.  210 Ill. 2d R. 237(b).  "Compelling the appearance of a party at trial is a matter for the sound discretion of the trial court, and the court's power to order a party to appear should only be exercised for a good cause and in such a manner that a party

may not be subject to harassment, oppression[,] or hardship." *Pickering v. Owens-Corning Fiberglas Corp.*, 265 Ill. App. 3d 806, 816 (1994).

According to the Railroad, compelling Burton's appearance was error because Burton was not hired until 2003 and thus had no relevant information regarding the Railroad's industrial hygiene practices and procedures during the plaintiffs' employment from 1939 to 1979. We note that the plaintiffs did not file a response to the motion to quash and that the transcript of the final pretrial conference, which according to the docket sheet is when the circuit court heard arguments on the motion to quash, is not a part of the record on appeal. Therefore, we have no way of knowing the justification given by the plaintiffs for compelling Burton's attendance at the trial. However, our review of the record reveals that Burton was called as an adverse witness at the trial pursuant to section 2-1102 of the Illinois Code of Civil Procedure (735 ILCS 5/2-1102 (West 2004)). On cross-examination, he testified to his qualifications as an expert witness in the field of industrial hygiene and explained the nature of the field to the jury. He testified that the purpose of an industrial hygienist is to ensure a safe workplace and that he was the first hygienist to be hired by the Railroad despite the field having been in existence since at least the 1940s.

Burton further testified that he was familiar with the "AAR documents," which is a group of documents that were admitted into evidence without objection. These documents consist of various letters and meeting notes obtained from the Association of American Railroads (the AAR), of which the Railroad is a member. Without objection, counsel for the plaintiffs reviewed these documents with Burton, and based on these documents, Burton opined that the Railroad knew that asbestos could potentially be hazardous in the 1930s. Burton further opined that the Railroad's failure to implement the recommendations set forth in the AAR documents, such as air testing, wetting down asbestos to minimize dust, and the use of respirators, would have been an unreasonable safety practice at the time that these

27

recommendations were issued. Furthermore, Burton explained to the jury the concept of bystander exposure. Based on the foregoing testimony by Burton, we cannot say that the circuit court's order compelling his attendance at the trial pursuant to Illinois Supreme Court Rule 237 was an abuse of discretion. Burton clearly had information relevant to the issues of liability in this action.

13. Prohibiting the Railroad From Cross-Examining Dr. Breyer on the "Gitlin Study"

The Railroad next argues that the circuit court erred when it prohibited the Railroad from cross-examining the plaintiffs' expert, Donald A. Breyer, M.D., concerning the "Gitlin Study." "Decisions of the trial court on the admission of evidence will not be disturbed absent an abuse of discretion." *Bowman v. University of Chicago Hospitals*, 366 Ill. App. 3d 577, 587 (2006). "A court abuses its discretion when no reasonable person would agree with the trial court's decision." *Bowman*, 366 Ill. App. 3d at 587. "In general, cross-examination of an expert witness with material from 'a recognized text or treatise is proper where either the court has taken judicial notice of the author's competence [citation] or, absent concession by the witness, the cross-examiner proves the text or treatise is authoritative [citations].' " *Bowman*, 366 Ill. App. 3d at 587 (quoting *People v. Johnson*, 206 Ill. App. 3d 875, 879 (1990)). "The author's competence is established if the judge takes judicial notice of it[] or if it is established by a witness expert in the subject." *Darling v. Charleston Community Memorial Hospital*, 33 Ill. 2d 326, 336 (1965).

Here, the circuit court granted the plaintiffs' motion *in limine* to exclude "[a]ny reference to a publication by Gitlin, *et al.*, unless defendant can first establish, outside the presence of the jury, an acceptable foundation for reference to the article in the presence of the jury." The only offer of proof made by the Railroad was during the cross-examination of Dr. Breyer, who testified via video evidence deposition. Dr. Breyer testified that he is a diagnostic radiologist and a "B-reader" who is certified by the National Institute of

Occupational Safety and Health. As Dr. Breyer explained, a B-reader conducts side-by-side comparisons of patients' chest X rays with standard films that reflect varying degrees of exposure to asbestos. Dr. Breyer testified that he conducted B-read examinations of all three plaintiffs' chest X rays. On each plaintiff's B-read, Dr. Breyer testified to varying degrees of abnormalities consistent with asbestosis.

On cross-examination, the Railroad asked Dr. Breyer if he was familiar with the Gitlin Study. Dr. Breyer testified that he had heard of the study and had read the article about a year before his testimony. Dr. Breyer verified that the article on the Gitlin Study appeared in the Journal of Academic Radiology, which is a peer-reviewed journal. Dr. Breyer admitted that when he was publishing in his academic career, he relied upon various review articles as source material. The Railroad then asked Breyer if the Gitlin Study is the type of article that he would have looked at if he was going to express an opinion or write an article on the same topic. Dr. Breyer answered that he could only say that it is an article in a peer-reviewed journal. Dr. Breyer then explained that it was his understanding that the authors of the Gitlin Study had compared some B-reader findings with their own findings and had concluded that these B-reader radiologists had a higher number of positive findings than they did. Dr. Breyer did not recall the exact figures. The article itself does not appear in the record on appeal.

Based on the foregoing, we cannot say that it was an abuse of discretion to exclude the cross-examination of Dr. Breyer concerning the Gitlin Study. A reasonable person could find that the Railroad's offer of proof did not establish the authors' competence or the authoritative nature of the article. We recognize that Dr. Breyer admitted that the article was published in a peer-reviewed journal. However, the authors of the article were not even identified, and we decline to hold that proof that a study is published in a peer-reviewed journal establishes, as a matter of law, the requisite foundation. Accordingly, we will not

29

reverse the judgment of the circuit court on this basis.

### 14. Excluding Testimony Regarding the "Halley Study"

Finally, the Railroad argues that the circuit court erred when it precluded the Railroad from eliciting testimony regarding the "Halley Study." According to the Railroad's brief, the Railroad attempted to elicit testimony regarding the Halley Study from the plaintiffs' industrial hygiene expert, Dr. Michael Ellenbecker, on cross-examination, as well as the Railroad's own industrial hygiene expert, Dr. Francis Weir, on direct examination. Both experts testified via video evidence deposition. Although the Railroad cites to the record where the circuit court's ruling can be found regarding the cross-examination of Michael Ellenbecker, it fails to cite to the ruling regarding Dr. Weir and fails to cite the actual testimony that was stricken from the video evidence depositions of the experts and served as the Railroad's offer of proof. Again, this is a clear violation of Illinois Supreme Court Rule 341(h)(7) (210 Ill. 2d R. 341(h)(7)), and we could consider this issue waived on this basis.

Despite the Railroad's clear violation of Rule 341(h)(7), we have scoured the record for the testimony and argument needed to resolve the issue on appeal. Our review of the record reveals that Dr. Ellenbecker testified on direct examination that he took into consideration a study, entitled the "Millette Study," in rendering his opinion that the plaintiffs were exposed to significant levels of asbestos in the course of their employment with the Railroad. Millette had simulated several activities involving asbestos that were occurring in the railroad industry during the relevant time period and had measured the exposure levels for those activities. On cross-examination, the Railroad asked Dr. Ellenbecker whether he was aware of the Halley Study, a study that reported that an inspector in Huntington, West Virginia, had taken a measurement of exposure at a railroad facility during the mixing of asbestos mud and had determined that there was an acceptable exposure level. Dr.

30

Ellenbecker testified, over the plaintiffs' objection, that he was aware of the study and that, in his opinion, the study reached an erroneous conclusion. At the trial, the circuit court sustained the plaintiffs' objection to cross-examination of Dr. Ellenbecker using the Halley Study, and this testimony was cut from the video that was shown to the jury at the trial.

During the Railroad's case in chief, the Railroad requested that it be permitted to read to the jury the prior testimony of Dr. Weir (from the trial of a prior group of plaintiffs in this cause) due to Dr. Weir's unavailability. During the prior trial, Dr. Weir testified that he had conducted a literature review which included the Halley Study. He then described the report and its findings, explaining that it was published by a public agency. At no time did Dr. Weir testify that he considered the author to be competent or the study to be authoritative. Upon objection in the prior trial, the Railroad asserted that Dr. Weir had not relied on the Halley Study in forming his opinions and that the Halley Study was being offered as circumstantial proof that the Railroad had knowledge of the study. At the prior trial, the circuit court overruled the objection to this testimony, allowing Dr. Weir's testimony.

The plaintiffs objected to the reading of Dr. Weir's testimony at the trial under review, on the basis of hearsay, and the circuit court overruled the objection. Prior to the circuit court's ruling on the objection, counsel for the Railroad stated, "The Halley material would also have to be excluded." Cocounsel for the Railroad then stated: "We talked about Halley. You already ruled that out in Ellenbecker's testimony, presuming your ruling is the same." Following the circuit court's ruling that the testimony could be read to the jury, the following colloquy between counsel and the circuit court occurred:

"THE COURT: Okay. Anything else before the jury comes in? You need time to clean that up?

MR. GAVIN [counsel for the plaintiffs]: Yes. I mean I feel like I need to make a record on a lot of this Dr. Weir testimony because there is a lot of stuff in here

31

that–there are pages of discussion about the Halley and stuff.

> THE COURT: Okay. You agree to take that out?
>
> MR. KURZ [counsel for the Railroad]: Well, I agree I'll abide by your ruling.
>
> THE COURT: You agree it's coming out?
>
> MR. KURZ: I think it should come in, but I understand your ruling.
>
> THE COURT: Why don't the two or three of you take a few minutes, see what you can excise out of there. If you don't agree, I'll rule.
>
> MR. KURZ: That's fine."

The record reflects that the Railroad read to the jury the testimony of Dr. Weir, excluding his testimony about the Halley Study, without further argument on the issue of its admissibility.

We will first address the circuit court's decision to exclude the Railroad's cross-examination of Dr. Ellenbecker regarding the Halley Study. The Railroad did not obtain Dr. Ellenbecker's concession that the Halley Study was an authoritative source of information in the field of industrial hygiene or that the author of the Halley Study was competent to render the conclusions that were rendered in that study. See *Bowman*, 366 Ill. App. 3d at 587 (quoting *Johnson*, 206 Ill. App. 3d at 879); *Darling*, 33 Ill. 2d at 336. In fact, Dr. Ellenbecker testified to just the opposite. Dr. Ellenbecker testified that the Halley Study reached an erroneous conclusion. In addition, even if Dr. Weir's testimony concerning the Halley Study had been admitted, Dr. Weir did not testify about the authoritative nature of the Halley Study. In fact, the Railroad conceded during Dr. Weir's testimony at the first trial that Dr. Weir's testimony regarding the Halley Study was not offered as a source that Dr. Weir relied upon in reaching his opinions in this matter. According to the Railroad, Dr. Weir's testimony regarding the existence of the Halley Study was being offered in the first trial only as circumstantial evidence that the Railroad might have had knowledge of its conclusions.

Accordingly, we find that the circuit court's ruling was not an abuse of discretion because a reasonable person could reach the same conclusion that the Railroad again failed to lay the requisite foundation to use the Halley Study for the purpose of cross-examination.

We now turn to the exclusion of Dr. Weir's testimony about the Halley Study. The circuit court clearly stated that the parties should excise all the testimony that they agreed to excise from Dr. Weir's testimony and that if there was anything they did not agree on, the circuit court would rule. The Railroad then read Dr. Weir's testimony to the jury, excluding his testimony about the Halley Study, without any further argument. Accordingly, we find that the Railroad failed to properly preserve any alleged error on the part of the circuit court in excluding Dr. Weir's testimony on the Halley Study, by stipulating to its exclusion.

**[The preceding material is nonpublishable under Supreme Court Rule 23.]**

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is affirmed.


Affirmed.


WELCH and WEXSTTEN, JJ., concur.

NO. 5-06-0618

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

| | | |
|---|---|---|
| XON BLACKBURN *et al.*, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiffs, | ) | Marion County. |
| | ) | |
| and | ) | |
| | ) | |
| DELBERT COPPLE, CARL HEINRICHSMEYER, | ) | |
| and DONALD HYATT, | ) | |
| | ) | |
| Plaintiffs-Appellees, | ) | |
| | ) | |
| v. | ) | No. 04-L-25 |
| | ) | |
| ILLINOIS CENTRAL RAILROAD COMPANY, | ) | Honorable |
| | ) | Patrick J. Hitpas, |
| Defendant-Appellant. | ) | Judge, presiding. |

---

**Opinion Filed**: January 22, 2008

---

**Justices**: Honorable Stephen L. Spomer, J.

Honorable Thomas M. Welch, J., and
Honorable James M. Wexstten, J.,
Concur

---

**Attorneys for Appellant**: Thomas R. Peters, Mark R. Kurz, Gundlach, Lee, Eggmann, Boyle & Roessler, 5000 West Main Street, Box 23560, Belleville, IL 62223-0560

---

**Attorney for Appellees**: William P. Gavin, Gavin Law Firm, #17 Park Place Professional Centre, Belleville, IL 62226